NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AKIL KHALFANI,<br><br>Plaintiff,<br><br>v.<br><br>HONORABLE TAHESHA WAY,<br><br>Defendant. | Civil Action No. 24-07749 (RK) (TJB)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon the second *ex parte* "Emergency Motion for Injunctive Relief" (the "Second TRO") filed by *pro se* Plaintiff Akil Khalfani ("Plaintiff"), (ECF No. 14), as well as Plaintiff's Motion for Reconsideration,[1] ("MR," ECF No. 13), of the Court's denial, (ECF No. 11), of Plaintiff's first *ex parte* "Emergency Motion for Injunctive Relief" (the "First TRO," ECF No. 9).[2] Plaintiff, an alleged congressional candidate in New Jersey's 10th Congressional District, asks the Court to "order Defendant [the Honorable Tahesha Way] to count and certify all write-in votes from the June 4, 2024 Primary Election and include Plaintiff as the Democratic candidate on the November 2024 ballot," ("STRO Br.," ECF No. 14-1, at *6),[3] and "order the immediate voiding of the erroneous 10th District ballots, which unlawfully list

---

[1] Plaintiff submitted a letter to the Court on October 15, 2024 requesting that the Motion for Reconsideration be reviewed "as an emergency motion." (ECF No. 15.)

[2] As with Plaintiff's first emergency motion, (*see generally* ECF No. 11), the Court interprets the second emergency motion to be requesting a temporary restraining order pursuant to Federal Rule of Civil Procedure 65, particularly given the *ex parte* nature of Plaintiff's request.

[3] Pin-cites preceded by an asterisk refer to the page numbers in the CM/ECF header.

LaMonica McIver as the Democratic candidate," (MR at *11).[4] For the reasons explained below, both of Plaintiff's Motions are **DENIED**.

I. **BACKGROUND**

Plaintiff alleges he is "a Congressional candidate for New Jersey's 10th District" vying for the U.S. House of Representatives seat left vacant by the Honorable Donald M. Payne Jr. ("Congressman Payne") after his passing on April 24, 2024. (STRO Br. at *3; "SAC," ECF No. 14-3, at *5.) The proceedings to fill Congressman Payne's vacancy occurred on dual, overlapping tracks.

*First*, there was an election to fill the approximately eight-month, "unexpired" portion of Congressman Payne's current term that ends in January 2025 (the "Special Election Track"). (STRO Br. at *4.) Governor Philip D. Murphy ("Governor Murphy") issued a writ for a special election to fill this "unexpired" portion of Congressman Payne's term. (STRO Br. at *4); *see also* N.J.S.A. 19:3-27 ("When a vacancy shall happen in the representation of this state in the United States house of representatives, it shall be the duty of the governor to issue a writ of election to fill such vacancy. . ."). Governor Murphy scheduled a special primary election for July 16, 2024 and a special general election for September 18, 2024. *See* Writ of Election, Governor Philip D. Murphy (May 3, 2024). LaMonica McIver was "the rightful winner" of the special general election in September, (MR at *10), and Plaintiff does not directly contest the proceedings on the Special Election Track.

*Second*, a standard primary and general election had previously been scheduled to determine who would fill the 10th Congressional District seat for the congressional term *beginning*

---

[4] Plaintiff also asks the Court "for an immediate injunction preventing the printing and dissemination of the General Election ballots," (STRO Br. at *6), but Plaintiff acknowledges in his Motion for Reconsideration that general election ballots have already begun being mailed out, (MR at *1).

2

in January 2025, after Congressman Payne's current term ended (the "General Election Track"). Plaintiff disputes the process used to select the new Democratic nominee for the General Election Track. A Democratic Party primary was held on June 4, 2024 (the "June Primary"). (*See* ECF No. 14-2 at *12.) Prior to Congressman Payne's death, he was slated to appear on the June Primary ballot given his status as the incumbent. Congressman Payne's name allegedly "could not be replaced" on the June Primary ballot. (*See id.*) During the June Primary, Plaintiff allegedly "conducted a write-in campaign and received the qualifying number of write-in votes for candidacy." (STRO Br. at *4.) However, the deceased Congressman Payne still received the highest number of votes at the June Primary.[5] (*See* ECF No. 14-2 at *13.)

Plaintiff alleges he received "the second highest votes," and that "[d]ue to [Congressman] Payne's death, [the Congressman's] votes are void." (STRO Br. at *4.) Therefore, Plaintiff argues he should be included on the November Election ballot as the Democratic congressional nominee for New Jersey's 10th Congressional District on the General Election Track. (STRO Br. at *2.) Plaintiff alleges there was a "failure to count and certify [his] write-in votes" from the June Primary, (MR at *4), and that LaMonica McIver—who was separately selected by Democratic county committees to appear on the November Election ballot as the designated Democratic candidate— is "erroneously" listed on the November Election ballot, (MR at *1).[6]

On July 12, 2024, Plaintiff filed a Complaint fashioned as a "Motion to Certify All Votes from the June 4, 2024 Primary Election and to Include Qualifying Write-in Candidates on the

---

[5] News sources confirm this. *See* C. Yilek, "Deceased Rep. Donald Payne Jr. wins New Jersey primary," *CBS News*, cbsnews.com (Jun. 5, 2024), *available at* https://www.cbsnews.com/news/donald-payne-jr-wins-new-jersey-primary/; K. Kasulis Cho, "Deceased New Jersey congressman wins Democratic primary election," *The Washington Post*, washingtonpost.com (Jun. 5, 2024), *available at* https://www.washingtonpost.com/politics/2024/06/05/new-jersey-primary-donald-payne-jr/.

[6] As the Court will further address, LaMonica McIver was selected by the Democratic county committees of Essex, Hudson, and Union counties to appear on the November Election ballot pursuant to the procedures

3

General Election Ballot" directed at Defendant Lieutenant Governor and Secretary of State the Honorable Tahesha Way, Esq. ("Defendant"). (ECF No. 1.) Plaintiff brought claims under the "Help America Vote Act," 52 U.S.C. § 20901, *et seq.*, 42 U.S.C. §1983, and 52 U.S.C. §10301(8) (pertaining to the denial or abridgement of the right to vote).[7] (*Id.* at *5 – 6.) Since then, Plaintiff has filed numerous motions and proposed amended complaints that all request essentially the same relief as Plaintiff's initial Complaint (*i.e.*, to certify the write-in votes from the June Primary and permit Plaintiff to appear on the November Election ballot).[8] (*See* ECF Nos. 4, 7, 9, 10, 13, 14.) On July 12, 2024—the same day Plaintiff filed the initial Complaint—Plaintiff filed a "Motion for an Order Insisting that the Defendant Certify and Count All Votes from the June 4, 2024 Primary Election." (ECF No. 4.) On September 19, 2024, Plaintiff filed a "proposed" First Amended Complaint. (ECF No. 7.) On September 26, 2024, Plaintiff filed both the First TRO and a "proposed" Second Amended Complaint. (ECF Nos. 9, 10.) Finally, Plaintiff filed the Second TRO on October 8, 2024, (ECF No. 14), and the Motion for Reconsideration on October 9, 2024, (ECF

---

for filling a congressional vacancy outlined in N.J.S.A. 19:13-20. (*See* ECF No. 14-2 at *13); *see also* "Joint Congressional District 10 Convention Endorses LaMonica McIver as Democratic Candidate," Insider NJ, insidernj.com (July 19, 2024), *available at* https://www.insidernj.com/press-release/joint-congressional-district-10-convention-endorses-lamonica-mciver-as-democratic-candidate/.

[7] The Court observes that Plaintiff alleges violations of his federal constitutional and statutory rights on the basis that Defendant allegedly failed to comply with state election law procedures. Given Plaintiff's invocation of federal claims, the Court will presume it has subject matter jurisdiction for purposes of deciding the Second TRO. *See Afran v. McGreevey*, 115 F. App'x 539, 541–42 (3d Cir. 2004) ("Federal jurisdiction is proper where plaintiffs assert a non-frivolous federal claim.")

[8] Plaintiff's proposed Second Amended Complaint, which is attached to the Second TRO, also names several state and county election officials as defendants, including but not limited to, the Essex County Clerk, the Hudson County Clerk, the Union County Clerk, and the Acting Director of the N.J. Division of Elections. (*See* SAC at *2–4.) None of these officials have entered an appearance in this matter, and while Plaintiff purports to have served them with some subset of his filings via certified mail, (*see* MR at *2–3), the Court declines to directly address these officials beyond this footnote. The Court's analysis remains the same regardless of whether these officials are considered proper parties to this litigation.

No. 13). Plaintiff has allegedly attempted to serve Defendant with process, (*see* ECF No. 12), but Defendant has not yet entered an appearance in this matter.

On October 1, 2024, the Court denied Plaintiff's *ex parte* First TRO because Plaintiff failed to "certif[y] in writing any efforts made to give notice [to Defendant] and the reasons why it should not be required," in accordance with Federal Rule of Civil Procedure 65(b)(1)(B). (ECF No. 11 at 5.) Plaintiff now asks the Court to reconsider its denial because Plaintiff allegedly served the First TRO on Defendant "[o]n or about September 27, 2024" "via certified U.S. Mail and email." (MR at *2.) Further, Plaintiff argues he "has a strong likelihood of success on the merits," because he "has fulfilled all statutory requirements" to appear on the November Election ballot, and he and others, including the electorate, will be irreparably harmed should he not be placed on the ballot. (*See id.* at *4–8 (noting that public interest "strongly compels" Plaintiff's inclusion on the November Election ballot).) Plaintiff asks the Court to grant the requested relief in the First TRO and "order the immediate voiding of the erroneous 10th District ballots, which unlawfully list LaMonica McIver as the Democratic candidate" and "mandate that Defendants place Plaintiff, Akil Khalfani, as the rightful Democratic candidate on the ballot, in accordance with both state and federal law." (MR at *11.)

Plaintiff also filed an *ex parte* Second TRO that includes substantively-identical briefing to the First TRO in that it asks the Court to grant "an immediate injunction preventing the printing and dissemination of the General Election ballots for New Jersey's 10th Congressional District" and "order Defendant to count and certify all write-in votes from the June 4, 2024 Primary Election and include Plaintiff as the Democratic candidate on the November 2024 ballot." (STRO Br. at *6.) New to the Second TRO, however, Plaintiff also attaches 56 pages of exhibits, (*see* ECF No. 14-

2), and an amended filing that appears to be identical to his proposed Second Amended Complaint, (*compare* SAC, *with* ECF No. 10).

## II. LEGAL STANDARD

The Court has a "duty to be mindful of a litigant's pro se status when examining pleadings filed by a pro se litigant." *Levine v. Fin. Freedom*, No. 18-4127, 2018 WL 4688338, at *2 (D.N.J. Sept. 28, 2018).

### A. Motion for Reconsideration

Reconsideration is an "extraordinary remedy" to be granted "sparingly." *United States v. Coburn*, No. 19-120, 2022 WL 874458, at *2 (D.N.J. Mar. 23, 2022) (quoting *NL Indus. Inc. v. Com. Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996)). "The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010) (internal quotation marks omitted) (quoting *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). To succeed on a motion for reconsideration, a movant must show "(1) an intervening change in the controlling law; (2) new evidence that was not available when the court issued its order, or (3) the need to correct a clear error of law or prevent manifest injustice." *Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 190 (3d Cir. 2021) (citing *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)).

Pursuant to Local Civil Rule 7.1(i), a party may move for reconsideration within fourteen (14) days of an entry of order or judgment on the original motion. In its brief, the party must "set[] forth concisely the matter or controlling decisions which the party believes the Judge has overlooked." *See* L. Civ. R. 7.1(i). "The word 'overlooked' is the operative term in the Rule." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) (citing Allyn Z. Lite, *New Jersey Federal Practice Rules* 30 (2001)). A motion for reconsideration does not entitle

a party to a second bite at the apple, and reconsideration is inappropriate when a party merely disagrees with a court's ruling or when a party simply wishes to re-argue its original motion. *Sch. Specialty, Inc. v. Ferrentino*, No. 14-4507, 2015 WL 4602995, *2–3 (D.N.J. July 30, 2015); *see also Florham Park Chevron, Inc. v. Chevron U.S.A.*, 680 F. Supp. 159, 162 (D.N.J. 1988).

    B. Temporary Restraining Order

Granting a temporary restraining order pursuant to Federal Rule of Civil Procedure 65 ("Rule 65") is an "extraordinary remedy" that "should be granted only in limited circumstances." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)). In determining whether to grant a motion for preliminary injunctive relief, the Court considers four factors: (1) whether the movant has shown "a reasonable probability of eventual success in the litigation"; (2) whether the movant "will be irreparably injured . . . if relief is not granted"; (3) "the possibility of harm to other interested persons from the grant or denial of the injunction"; and (4) whether granting the preliminary relief will be in "the public interest." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (citing *Del. River Port Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)). The movant bears the burden of showing their entitlement to an injunction. *See Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)).

**III. DISCUSSION**

    A. Plaintiff's Motion for Reconsideration

The Court first addresses Plaintiff's Motion for Reconsideration of the Court's denial of the First TRO. Plaintiff now alleges he "complied with Rule 65(b)(1)(B) by providing notice to all Defendants." Plaintiff alleges he "filed a Certificate of Service documenting . . . service attempts,

7

including certified tracking numbers with the submission of the Emergent Motion on September 27th." (MR at *2.)

To the extent the "Emergent Motion" Plaintiff references is the First TRO, the Court finds Plaintiff's assertions to be incorrect. Plaintiff did not attach a certificate of service to the First TRO. (*See* ECF No. 9.) However, Plaintiff did attach a certificate of service to another document he filed that same day—the proposed Second Amended Complaint. (*See* ECF No. 10 at *27–29.) That certificate of service states that the "foregoing Motion"—not the separately-filed First TRO—was sent via certified mail and e-mail to Defendant. (*See id.* at *27.)

It is unclear to the Court whether Defendant specifically received notice or service of the First TRO. Plaintiff refers interchangeably to the "Emergency Motion," "Emergent Motion," and "September 26, 2024 Emergent Injunction Motion," without ever differentiating between the First TRO and the proposed Second Amended Complaint—both of which were filed on September 26, 2024. (*See* ECF Nos. 9, 10.)

Because Plaintiff describes the "Emergent Motion" he allegedly served on Defendant as having been filed with a certificate of service attached, (MR at *2), the Court reasons that Plaintiff attempted to serve on Defendant the proposed Second Amended Complaint—the only document filed with a certificate of service on September 26, 2024. (*See* ECF No. 10.) If true, the Court's decision in its Memorandum Order, (*see* ECF No. 11), still stands as Plaintiff failed to meet his notice obligations under Federal Rule of Civil Procedure 65(b)(1)(B) with respect to the First TRO.[9] *See Averhart v. CWA Loc. 1033*, No. 10-6163, 2012 WL 3950370, at *5 (D.N.J. Sept. 10,

---

[9] To the extent Plaintiff did provide notice of the First TRO to Defendant, the Court's reasons for denying the Second TRO outlined below provide additional bases for denying Plaintiff's Motion for Reconsideration, as the First TRO is substantively identical to the Second TRO, albeit without exhibits or the proposed Second Amended Complaint attached.

2012) (finding that where plaintiff "does not address" the Court's rationale for its decision, "the Court cannot find that there was any error of law or fact which would warrant reconsideration"). Therefore, Plaintiff's Motion for Reconsideration is **DENIED**.[10]

B. Second TRO

The Court notes at the outset that the Second TRO likely suffers from the same lack-of-notice deficiencies as the First TRO.[11] *See* Fed. R. Civ. P. 65(b)(1)(B). The Second TRO does not include a certificate of service or an explanation as to why notice to Defendant should not be required. Nonetheless, for the avoidance of doubt, the Court will venture beyond Rule 65's notice

---

[10] The Court briefly notes its continued concern that Defendant has not properly been served with process in this matter in accordance with Federal Rule of Civil Procedure 4. The Court previously put Plaintiff on notice in its prior Memorandum Order of its concerns regarding Plaintiff's current predicament. (*See* ECF No. 11 at 5 (noting Plaintiff's failure to serve Defendant "has led him to be the architect of his own plight").) Plaintiff alleges to have served some or all of his numerous motions on Defendant via certified mail addressed to Defendant's place of employment. (*See* MR at *2–3, *14.) Plaintiff also alleges to have had the summons left with a "Sandra Lewis" at Defendant's place of employment on October 7, 2024. (*See id.* at *16). *First*, Plaintiff does not specify whether "Sandra Lewis" is an authorized agent of Defendant permitted to receive service on Defendant's behalf. *See* Fed. R. Civ. P. 4(e)(2)(c); N.J. Ct. R. 4:4-4(a)(1). *Second*, this method of service—leaving process with a nondescript individual at Defendant's place of employment—does not conform with the methods for individual service outlined in Federal Rule of Civil Procedure 4(e) or New Jersey Rule of Court 4:4-4(a)(1), or even the methods for service upon the State of New Jersey or other public bodies outlined in New Jersey Rule of Court 4:4(a)(7)–(8). *Third*, service by certified mail is generally only valid under New Jersey law where "'the defendant answers the complaint or otherwise appears in response thereto' within 60 days following mailed service." *Lewis v. Vestberg*, No. 23-0102, 2024 WL 866349, at *4 (D.N.J. Feb. 29, 2024) (quoting N.J. Ct. R. 4:4-4(c)); *see also* N.J. Ct. R. 4:4-4(a)(7) (stating State of New Jersey can be served by certified mail where a copy of the summons and complaint are mailed "to the Attorney General or to the Attorney General's designee named in a writing filed with the Clerk of the Superior Court.")

[11] "[A] motion for reconsideration is simply not the appropriate vehicle to bring what is essentially a new request." *United States v. Norian Corp.*, 709 F. App'x 138, 144 (3d Cir. 2017). Nonetheless, given Plaintiff's *pro se* status, the Court will incorporate Plaintiff's new request for relief found in his Motion for Reconsideration—that LaMonica McIver's name be removed from the November Election ballot and replaced with Plaintiff's name—into its analysis of the Second TRO. (*See* MR at *11.)

9

requirement to analyze Plaintiff's probability of success in this litigation. *See Reilly*, 858 F.3d at 176.

The Court finds that Plaintiff does not have a reasonable probability of success here. *See id.* Plaintiff's arguments with respect to constitutional and statutory violations hinge on Plaintiff being the "qualifying write-in candidate" in the June Primary because the votes cast for the deceased Congressman Payne are "void." (*See, e.g.*, STRO Br. at *4, *5; SAC at *11, *18.) Specifically, Plaintiff argues that "[p]ursuant to N.J.S.A. 19:3-10, in the event that a candidate's nomination is deemed null and void, the candidate with the next highest number of votes must be printed on the ballot for the General Election." (SAC at *18.) From this premise, Plaintiff argues that because he allegedly received the second-highest number of votes in the June Primary, the fact that he was neither certified as the Democratic nominee for the November Election nor included on the November Election ballot constitutes a "willful neglect of duty" on the part of Defendant, an "unjustifiable disenfranchisement of the votes of New Jersey's 10th Congressional District," and a "violation of the principles of fair representation and the foundational tenets of our democratic system." (*Id.* at *18–19.)

However, Plaintiff's assertion that N.J.S.A. 19:3-10 "provide[s] a clear statutory framework for handling such situations" as the instant matter is incorrect. (*See id.* at *20.) N.J.S.A. 19:3-10 states:

> If it shall be determined in a manner hereinafter provided, that the nomination for an office of a successful candidate at any primary election is null and void, and if such determination shall have been made ten days before the election at which the candidates nominated at such primary election are to be voted for, an order shall be made by the court or judge making such determination prohibiting the printing of the name of such candidate on the ballot to be used at such election, and the name of the candidate for nomination or party position at such primary election receiving the next highest number

> of votes shall thereupon be printed upon the ballot as the nominee for the office.

N.J.S.A. 19:3-10. As the language of the statute makes clear, this provision only applies "[i]f it shall be determined . . . that the nomination for an office of a successful candidate at any primary election is null and void . . ." (*Id.*) While Plaintiff repeatedly assumes the votes for Congressman Payne in the June Primary are null and void, (*see* STRO Br. at *4, *5; SAC at *11, *18), New Jersey election law counsels otherwise. In fact, New Jersey courts have repeatedly held:

> [W]hen a candidate dies after the time limited for replacing his name on the primary ballot, but before the election, and that candidate polls sufficient votes for nomination, his nomination is not null and void, but rather creates a vacancy. This being so, it follows that such vacancy is to be filled in the manner prescribed by N.J.S.A. 19:13-20.

*Petition of Keogh-Dwyer*, 256 A.2d 314, 317 (N.J. Super. Ct. 1969), *aff'd sub nom. In re Keogh-Dwyer*, 257 A.2d 697 (N.J. 1969); *see also Alongi v. Schatzman*, 274 A.2d 33, 41 (N.J. 1971) ("Generally, votes cast for an ineligible person, although ineffective to elect that person to office are not treated as void"); *Bogdanove v. Mayor & Council of Borough of Waldwick*, 293 A.2d 213, 214 (N.J. App. Div. 1972) ("It cannot be disputed that the death of Nathaniel Bogdanove, just seven days before the November 1971 general election and his receipt of the high vote at that election, created a vacancy . . .")

The leading case on the issue, *Petition of Keogh-Dwyer*, is instructive. *See* 256 A.2d 314. There, Douglas Gimson and Walter C. Keogh-Dwyer both sought the Republican nomination for a state assemblyman position. Douglas Gimson died just 19 days before the primary election, but still received the highest number of votes. *See id.* at 315. The Superior Court of New Jersey, Law Division was asked to decide "whether in such circumstances a vacancy results or whether the purported nomination is null and void." *Id.* As the court there explained:

11

> This distinction between a vacancy and a void nomination is significant because the Legislature has provided clear, certain and different remedies in each of these cases. If a vacancy exists, a party committee certificate shall fill it. N.J.S.A. 19:13-20. If the nomination is void, the candidate receiving the next highest number of votes shall succeed to the nomination. N.J.S.A. 19:3-10.

*Petition of Keogh-Dwyer*, 256 A.2d at 315. In examining the New Jersey Legislature's intent in drafting the election laws at issue, the court found that Douglas Gimson's death created a vacancy as opposed to a nullity. *See id.* at 318 ("It can as easily be said that votes for a dead man are affirmative votes for the then unknown choice of the appropriate informed party committee under N.J.S.A. 19:13-20, in preference to a live candidate named on the ballot").

Thus, consistent with the holding and rationale of *Petition of Keogh-Dwyer*, the Court finds that the votes for Congressman Payne in the June Primary are not null and void, but rather, create a vacancy to be filled in accordance with N.J.S.A. 19:13-20. Indeed, the Democratic Party county committees selected LaMonica McIver as the November Election nominee in accordance with N.J.S.A. 19:13-20 back in July 2024. (*See* ECF No. 14-2 at *13); *see also* "Joint Congressional District 10 Convention Endorses LaMonica McIver as Democratic Candidate," Insider NJ, insidernj.com (July 19, 2024). Consequently, Plaintiff cannot rely on N.J.S.A. 19:3-10 to argue he should appear on the November Election ballot. The Acting Director of the N.J. Division of Elections explained as much to Plaintiff in a letter dated July 24, 2024. (ECF No. 14-2 at *13 (noting "[t]he person selected by the Democratic county committees will be placed on the General Election ballot as the Democratic Party nominee for the 10th Congressional District.").)[12]

---

[12] The Acting Director also counseled Plaintiff that if he sought to appear on the November Election ballot as a candidate other than as a candidate for the two majority parties, he would have had to engage in the "direct nomination petition process." (ECF No. 14-2 at *14.) Plaintiff does not allege he filed a direct nomination petition prior to or on the day of the June Primary, as required by N.J.S.A. 19:13-9 to participate in the direct nomination petition process. Rather, Plaintiff appears to have participated in the June Primary in the hopes of specifically obtaining the *Democratic* congressional nomination. Indeed, Plaintiff argues

12

Plaintiff does not directly address the vacancy procedures in N.J.S.A. 19:13-20 in his briefing, arguing incorrectly instead that the procedures outlined in N.J.S.A. 19:3-10 should have been followed. (*See, e.g.,* SAC at *25.). Plaintiff's cites to other provisions of New Jersey election law are equally unavailing. For example, Plaintiff argues that "[u]nder N.J.S.A. 19:23-8, Plaintiff, as a qualified write-in candidate who received the requisite number of votes, is entitled to have his candidacy certified." (MR at *3–4.) However, N.J.S.A. 19:23-8 pertains to the requisite number of votes to appear on a *primary* election ballot. *See* N.J.S.A. 19-23:8; *see also Arsenault v. Way*, 539 F. Supp. 3d 335, 340 (D.N.J. 2021) (applying N.J.S.A. 19:23-8 in the context of a "candidate who wishes to appear on the ballot in a primary election").

Plaintiff also cites N.J.S.A. 19:14-2.1 to argue that "write-in-candidates who meet the petition signature threshold of 200 votes must be included on the general election ballot." (STRO Br. at *5.) However, N.J.S.A. 19:13-20.1 limits N.J.S.A. 19:14-2.1 to situations where "[t]here is no candidate on the primary election ballot of a political party for nomination for election to a public office in the general election . . . ." N.J.S.A. 19:13-20.1; *see Catania v. Haberle*, 588 A.2d 374, 375 (N.J. 1990) (applying N.J.S.A. 19:14-2.1 where a "Republican primary ballot . . . had no names because no petitions had been filed"). This is not the case in the instant matter, as Congressman Payne appeared on the June Primary ballot as a nominee.

While Plaintiff argues that "[d]enying Plaintiff's rightful candidacy" would "violate[] the electorate's right to choose a candidate who represents their interests," (MR at *8), the inverse is actually true. As the court in *Petition of Keogh-Dwyer* noted, "[i]t can as easily be said that votes for a dead man . . . are, in effect, votes to create a vacancy in preference to voting for a named candidate." 256 A.2d at 318; *see also Alston v. Mays*, 378 A.2d 72, 76 (N.J. Super. Ct. 1977) ("It

---

not that he should be included as an independent candidate on the November Election ballot, but rather, be included "as the Democratic candidate." (*See, e.g.*, MR at *4, STRO Br. at *6, SAC at *25.)

is not the right to vote which is the underpinning of our democratic process; rather, it is the right of choice for whom to vote."). To declare void the votes for Congressman Payne in the June Primary—the highest number of votes for the 10th Congressional District nomination—would lead to a "catastrophic" situation that "would serve to elect one not wanted. . ." *Petition of Keogh-Dwyer*, 256 A.2d at 318. Plaintiff is correct that "[v]oters in New Jersey's 10th Congressional District . . . are constitutionally entitled to a fair and equitable election where every vote is counted." (MR at *9.) Counting the votes cast for Congressman Payne in the June Primary achieves this result.

Thus, because Plaintiff has relied on incorrect legal grounds as his basis for arguing he should appear on the November Election ballot and for arguing his absence thereof results in federal constitutional and statutory violations, the Court finds Plaintiff has no reasonable probability of success in this litigation. Consequently, the Second TRO is **DENIED**.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Reconsideration and second *ex parte* "Emergency Motion for Injunctive Relief," (ECF Nos. 13, 14), are **DENIED**. An appropriate Order accompanies this Opinion.

     *[signature]*
     ──────────────────────────────
     **ROBERT KIRSCH**
     **UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: October 16, 2024